UNITED STATES of America,
Plaintiff–Appellee,

v.

Howard J. ELMENDORF,
Defendant–Appellant.

No. 89–3378.

United States Court of Appeals,
Seventh Circuit.

Argued Oct. 25, 1990.

Decided Oct. 11, 1991.

---

Deborah J. Daniels, U.S. Atty., Larry A. Mackey, Robert S. Powell, Asst. U.S. Attys., Office of U.S. Atty., Cale J. Bradford (argued), Indianapolis, Ind., for plaintiff-appellee.

Robert A. Handelsman (argued), Chicago, Ill., for defendant-appellant.

Before COFFEY and KANNE, Circuit Judges, and ESCHBACH, Senior Circuit Judge.

COFFEY, Circuit Judge.

The defendant appeals his sentence alleging that the trial court failed to adequately advise him of the range of sentence he would receive under the Sentencing Guidelines before accepting his plea of guilty. Further, he alleges that the sentencing

judge failed to properly specify and calculate the basis for an upward departure from the Guidelines in imposing the defendant's sentence. We affirm.

## I. FACTS AND DISPOSITION BELOW

A Federal Grand Jury returned a three-count indictment against the defendant Elmendorf on May 4, 1989: Count One charged the defendant with armed bank robbery of the Carson Square Branch of Bank One in Indianapolis, Indiana, in violation of Title 18, U.S.C. §§ 2113(a) and (d); Count Two charged the defendant with illegal use of a firearm in violation of Title 18, U.S.C. § 924(c); and Count Three charged possession of a handgun by a convicted felon in violation of Title 18, U.S.C. §§ 922(g)(1) and 924(a). On July 17, 1989, the government and the defendant entered into a plea agreement with the defendant agreeing to plead guilty to Counts One and Two of the indictment, and the government agreeing to dismiss Count Three at sentencing. According to the signed plea agreement, the defendant admitted that he understood that the government was free to recommend a period of incarceration up to the maximum sentence of 30 years and/or fine of $500,000, or both.

The district court held a hearing on the Petition To Enter the Guilty Plea on August 1, 1989 and the court, after hearing testimony, determined that the defendant was entering into the plea agreement freely and voluntarily with full knowledge of its contents, including the fact that there was no specific agreement as to the length of sentence the government would recommend. The court also determined that the defendant understood that the court was free to depart from the Guidelines, including a departure upward to a maximum penalty of 30 years and $500,000 in addition to the imposition of special assessments of

$50.00 for each count. After the court's inquiry, the defendant admitted to the armed bank robbery of a Bank One in Indianapolis, Indiana as charged in the indictment.

The presentence report's computation of the defendant's offense level pursuant to the Sentencing Guidelines placed the defendant's offense at an adjusted offense level of 17, and the defendant's criminal history was 18, 5 more than the required amount to place him in Category VI, the highest Criminal History Category. The presentence report determined that the Guidelines provided for a sentence of 51 to 63 months for an offense level of 17 for an offender with a Category VI criminal history. Several of the defendant's earlier convictions in his criminal history were not taken into account in this computation since they were too remote in time from the date of sentencing, pursuant to U.S.S.G. § 4A1.2(e). These uncounted convictions occurred in the early 1960's.[1] The following offenses were considered in computing the defendant's criminal history score:

1972–Criminal possession, sale and transfer of counterfeit monies.

1976–Criminal possession of forged instruments, two counts.

1980–Theft of over $200.00 and unlawfully carrying a weapon.

1981–Theft by deception (presented insufficient funds to cover his checks).

The presentence report recounted a six bank robbery crime spree the defendant engaged in during the summer of 1988 in Colorado, California, Michigan, Kentucky and Ohio[2] and it also noted that there was a robbery charge pending in the United States District Court of Nevada charging the defendant with a February 19, 1988, bank robbery in Las Vegas, Nevada. All six of these bank robberies were consolidated for testimonial and convenience pur-

---

1. The convictions include separate instances of breaking and entering, uttering a forged document, larceny, embezzlement, carrying a firearm in a vehicle, and two armed robberies which occurred in 1961 and 1963.

2. The bank robberies occurred in the following locations:

June 20, 1988—Denver, Colorado
July 14, 1988—San Francisco, California
July 20, 1988—Dearborn, Michigan (armed)
July 21, 1988—Cincinnati, Ohio (armed)
July 23, 1988—Dayton, Ohio (armed)
August 12, 1988—Lexington, Kentucky (armed).

poses by transfer to the United States District Court for the Southern District of Ohio pursuant to Rule 20 of the Federal Rules of Criminal Procedure. On June 9, 1989, the defendant was sentenced on the six bank robberies: the court imposed concurrent sentences of 15 years on each of the two unarmed bank robberies and concurrent 20 year sentences on each of the four armed bank robberies, all concurrent with each other. As a result of consolidation, the six robberies were considered as a single offense under Guidelines provision § 4A1.2(a)(2) for purposes of computing the defendant's Criminal History Category in the presentence report.[3]

The presentence report also set forth reasons why the district court might consider an upward departure from the sentencing range suggested in the Guidelines: an additional 14 points could have been added to the defendant's criminal history score had the 1960's convictions been considered, and another 12 points could have been taken into consideration if the recent robberies committed by the defendant had not been consolidated for testimonial and convenience purposes under Rule 20. The presentence report went on to state that these 26 unconsidered points, in addition to the 18 considered points, resulted in a total of 44 points, more than three times the number of points necessary to place the defendant in Category VI, the highest Criminal History Category.

The defendant once again appeared before a trial court for sentencing on September 12, 1989 regarding the armed robbery of a Bank One, in Indianapolis. At the hearing, Elmendorf and his counsel both stated that they had reviewed the presentence report and had no objections to its contents. After setting forth his reasoning for departing from the Category VI, Offense Level 17 sentencing range, the trial judge sentenced the defendant to 15 years on Count One of the indictment (10 years less than the statutory maximum) and the mandatory 5 consecutive years on Count Two and three years supervised release upon release from imprisonment. The 20-year sentence imposed by the district court for the robbery in Indiana was ordered to run consecutive to the 20-year sentence imposed in the Southern District of Ohio for his previous conviction of the six consolidated bank robberies.

## II. ISSUES FOR REVIEW

The defendant on appeal raises the following issues: (1) the district court should not have accepted his guilty plea before advising him of the range of the sentence he would receive; and (2) the district court "did not properly specify the basis for an upward departure" from the Guidelines and failed to "properly calculate an enhanced sentence."

## III. DISCUSSION

### A. Acceptance of Guilty Plea

■ Initially the defendant argues that his guilty plea for the Indianapolis armed bank robbery should not have been accepted until he had "as good an idea as possible" of the sentence he would receive. The defendant's theory is that "[a]lthough [he] was advised of the maximum sentence under 18 U.S.C. Sec. 2113, he nevertheless was surprised when he received a sentence which was almost three times what he could expect from category VI of level 17." In support of this argument, the defendant cites *United States v. Salva*, 902 F.2d 483 (7th Cir.1990) stating that the district court give the defendant as good an idea as possible of the likely Guidelines result before accepting a plea so that the defendant will be able to make more intelligent choices about whether to accept the plea bargain. Furthermore, the defendant misinterprets

---

3.  § 4A1.2. **Definitions and Instructions for Computing Criminal History**
    (a) *Prior Sentence Defined*
        \*     \*     \*     \*     \*     \*
    (2) Prior sentences imposed in unrelated cases are to be counted separately. Prior sentences imposed in related cases are to be treated as one sentence for purposes of the criminal history. Use the longest sentence of imprisonment if concurrent sentences were imposed and the aggregate sentence of imprisonment imposed in the case of consecutive sentences.

the decision to his benefit and contends that *Salva* sets forth a "procedural rule" affecting the manner of the acceptance of a guilty plea and argues that it should be applied retroactively. We disagree with the defendant's contention that *Salva* sets forth a procedural rule for the acceptance of a guilty plea.

*Salva* states that a district court is not required to predict the specific terms of the sentence the court intends to impose and we refuse to mandate such a requirement:

> **"Due process, however, does not oblige the government or the court to predict the defendant's sentence. Defendants were not entitled to such predictions before the Guidelines came into effect, and the Guidelines have not altered that rule."**

*Salva* at 487 (citations omitted) (emphasis added). The defendant cites the following passage from *Salva* in support of his meritless argument that the opinion created a procedural rule that requires the trial court to inform the defendant of the likely sentence he will receive before the acceptance of a guilty plea:

> "We do, however, believe that defendants will be able to make more intelligent choices about whether to accept a plea bargain if they have as good an idea as possible of the likely Guidelines result. In this connection, we note the Sentencing Commission's policy statement at Section 6B1.1(c), which reads:
>
> > 'The court shall defer its decision to accept or reject any nonbinding recommendation pursuant to Rules 11(e)(1)(B), and the court's decision to accept or reject any plea agreement pursuant to Rule 11(e)(1)(A) and 11(e)(1)(C) until there has been an opportunity to consider the presentence report....' "

*Salva* at 488 (footnotes omitted). This clearly is not a "procedural rule," and as a result, has no effect on the defendant's sentence.

It is interesting to note that the defendant does not argue that he failed to understand the sentencing possibilities, and a review of the record demonstrates that the district court adequately informed the defendant of the range of sentencing possibilities:

THE COURT: It indicates also that you have—you have discussed with your counsel the impact of the new 1984 Guidelines on this sentencing; is that right?

THE DEFENDANT: Yes, sir.

THE COURT: Let me address myself specifically to the impact of those guidelines as they had to do with your case. You understand, sir, that this is a base offense—Count One in this case, I should say—Count One in this case is a base offense of an 18. And to that can be added a prior criminal history of 6, which makes a total, of course, of 24 which under the Guidelines means a maximum of 71 months or 5 years and 11 months and a minimum of 57 months which would be 4 years and 9 months I think. You understand that would be the Guideline range given the offense level of 18 plus the criminal history of 6 for a total of 24. Do you understand that?

THE DEFENDANT: Yes, sir.

THE COURT: That would be the range under the Guidelines. You understand that this is impacted by your plea to Count Two which carries a mandatory consecutive 5-year term which means whatever you get under Count One would be added to this 5 years. So in this case, the maximum would be 5 years and 11 months plus 5 years or 10 years and 11 months.

THE DEFENDANT: Yes.

THE COURT: And the minimum under the Guidelines would be 4 years and 9 months plus 5 years which would be 9 years and 9 months. Do you understand that?

THE DEFENDANT: Yes, sir.

THE COURT: You understand that the Court, pursuant to this agreement and also pursuant to the law, is free to depart from the Guidelines. The Court can go below the Guidelines, but is not free to go below the 5 years. In any case, the plea to Count Two is a 5-year

term. *The Court can go below or above the Guidelines in Count One and could in fact impose the maximum sentence under the statute for this Count One charge which would be 25 years and a fine of $250,000.* So when we talk about the Guidelines, we are talking about 10 years and 11 months maximum. When we talk about the right of the Court to depart from the Guidelines, the maximum in this case could be 25 years on Count One and 5 years on Count Two which of course is 30 years. Do you understand that?

THE DEFENDANT: Yes, sir.

THE COURT: You understand also there is possible fine under each of those counts of $250,000. So that would make the possible maximum fine of this case $500,000. Do you understand that?

THE DEFENDANT: Yes, sir.

THE COURT: And a special assessment of $50 per felony which would be $100.

THE DEFENDANT: Yes, sir.

THE COURT: *You think you understand those possible consequences of this plea?*

THE DEFENDANT: *Yes I do. Sir.*

(Emphasis added). The record reveals that the defendant entered into the plea agreement knowingly and voluntarily, and the defendant's argument that he would have been in a better position to understand the sentencing possibilities if the district court had been in possession of the presentence report at the time of accepting his plea is without merit for the record clearly establishes that the court advised the defendant of his sentencing possibilities prior to the defendant's entering his plea, including the maximum sentences under the statute. *Salva* mandates only that the trial judge

advise the defendant of his minimum and maximum sentencing possibilities prior to the entry of his plea of guilty and the trial court complied.

B. Sentencing Guidelines Departure

The defendant next argues that the district court failed to properly specify and calculate the basis for an upward departure from the guidelines.

"We review a district court's departure from the Guidelines sentencing range to determine whether it was reasonable in light of the district court's explanations for its departure at the time of sentencing. Review of a departure is essentially a three-step process.

"First, we must determine whether a district court's stated grounds for departure are of a kind that may appropriately be relied upon to justify departure. This is a question of law...."

*United States v. Williams,* 901 F.2d 1394, 1396 (7th Cir.1990) (citations omitted).

*1. Stated Grounds for Departure*

■ The defendant argues for the vacation of his sentence and states that the trial court did not properly set forth its reasoning for the upward departure in sentence. Initially, *Williams* requires that we "determine whether a district court's stated grounds for departure are of a kind that may appropriately be relied upon to justify a departure." *Id.* The defendant cites 18 U.S.C. § 3553(c)(2) in support of his argument that the district court must give "the specific reason" for imposing a sentence outside the Guidelines.[4]

Contrary to the defendant's claim, the reasons given by the district court at the sentencing hearing for the upward departure were specific:

cific reason for the imposition of a sentence different from that described."

**4.** The relevant portions of § 3553(c)(2) are as follows:

"(c) **Statement of reasons for imposing a sentence.**—The court, at the time of sentencing, shall state in open court the reasons for its imposition of the particular sentence, and, if the sentence—

\* \* \* \* \* \*

**(2)** is not of the kind, or is outside the range, described in subsection (a)(4), the spe-

THE COURT: Well, Mr. Elmendorf, yours is a record marked by almost, at your age, almost more time in prison than on the street. And at 50 years old our statistics or sociologists continue to try to urge that individuals 35 years old is when they start changing their pattern. I don't know if that's true or not. I know it's not true in your case. *When I look at the presence investigation and I see five or six pages to the record, actually more than that, and there has just been pretty much of a pattern throughout your life to not conform your conduct to the law, or at least to the standards that most folks don't have any difficulty conforming their lives to. The past criminal history does have an impact on the Guidelines, but the Guidelines don't take into account the past over a certain number of years, and that is a rather arbitrary figure that the Guidelines use, and we are encouraged, as judges, when we look at the comments we are encouraged that if there is a circumstance under which an individual has not or has a record, the Guidelines themselves admit to not taking into account and the Court can depart from the Guidelines and recognize that circumstance. And I think this is a case in which that should be done.* Just any responsible judge who picks up your record and sees that a 50 year old man, who has had opportunity after opportunity after opportunity after opportunity to change his life and sees that he has not changed his life, would, I think, be remiss if they [sic] didn't consider an upward departure from the Guidelines. And so for that reason, I will depart upwardly from the Guidelines in this case. And the Guidelines called for a maximum in this matter of 63 months. It doesn't seem to the Court that 63 months is properly reflective of your record and the way you have chosen to live your life. It may very well be immaterial, Mr. Elmendorf, what the court does on this sentence. If your 20 year sentence

stays, you're going to be 60, 65 years old before you get out of jail on that sentence.

THE DEFENDANT: Exactly.

THE COURT: So I suppose I could give you a hundred years and it probably won't make any difference in the long run. But that is not really what my concern is. My concern is that I look at your record and I'm concerned about what happens in this case and I make an independent decision as to what I think is a fair sentence in light of what you have done and who you are.

(Emphasis added).

It is clear that the district court enhanced the defendant's sentence because the defendant's Criminal History Category in the presentence report failed to take into account Elmendorf's extensive criminal convictions. Indeed, the trial judge stated as much at the sentencing hearing. The fact that the trial court did not recite in categorical sequence each and every prior offense set forth in the presentence report that it relied on in enhancing the defendant's sentence is immaterial and unnecessary: "[T]he grounds for departure must either be identified in the presentence report, *or* by the sentencing court at the defendant's sentencing hearing." *United States v. Williams,* 901 F.2d 1394, 1400 (7th Cir.1990) (citations omitted) (emphasis in the original). It is sufficient for purposes of our review that it is evident that the district court relied on the information contained in the presentence report regarding the defendant's criminal history (over five pages), and that this reliance was made known to the defendant at sentencing. Significantly, the defendant and his counsel had an opportunity to review the presentence report prior to sentencing and failed to object or question the report when given the opportunity at the sentencing hearing. Therefore, because the defendant and his counsel had an opportunity to review the presentence report in which the probation officer had suggested reasons for an upward departure, the district

court's upward departure from the Guidelines should have come as no surprise.

### 2. Facts Underlying Grounds for Departure

■ *Williams* next requires that "we review whether the facts that underlie the grounds for departure actually exist in [the] case." *Id.* at 1396. Pursuant to the Sentencing Guidelines, the presentence report computed the defendant's level for the Indiana bank robbery at an adjusted offense level of 17. In addition, the presentence report's computation of the defendant's criminal history at 18 placed him in Category VI, the highest Criminal History Category under the Guidelines. However, the defendant's Criminal History Category underrepresents the seriousness of his history of criminal conduct for two reasons. First, an additional 14 points could have been added to the defendant's criminal history score if those offenses committed by the defendant which had not been taken into account due to their age (pursuant to § 4A1.2(e) of the Guidelines) were considered.[5] Furthermore, another 12 points could have been added for the six bank robberies he committed in 1988 that were not considered as individual crimes as a result of the trial judge's misguided application of the Rule 20 consolidation procedure (for reasons explained *supra* ). Due to this consolidation, all six bank robberies were treated as a single crime for purposes of computing the defendant's Criminal History Category in the instant offense.

Had these 26 points been added to the 18 points considered by the trial court, the resulting score of 44 is more than *three times* the number necessary to place the defendant in Category VI! Indeed, as the trial judge noted at the sentencing hearing, "any responsible judge who picks up [the defendant's] record and sees a 50–year old man, who has had opportunity after opportunity ... to change his life and sees that he has not changed his life would, I think,

be remiss if they [sic] didn't consider an upward departure from the guidelines."

This court has previously stated that "Guideline § 4A1.3 provides that a court may depart upward from an otherwise applicable Guideline range if reliable information indicates that a defendant's Criminal History Category does not adequately reflect the seriousness of the defendant's past criminal conduct or the likelihood the defendant will commit other crimes." *United States v. Schumde,* 901 F.2d 555, 559 (7th Cir.1990). Thus, the district court's departure from the Guideline sentencing range of 51 to 63 months for a Category VI defendant with an offense level of 17 was in fact practically mandated when one considers the defendant's lengthy criminal record and 26 uncomputed criminal history points.

### 3. Degree of Departure

■ The defendant argues that the district court's departure was unreasonable. *Williams* requires the following:

"[W]e must determine whether the degree of departure was reasonable. While we always apply a deferential standard in reviewing degree of departure, our method of review will vary depending on the type of departure we are reviewing.... [I]f an inadequate Criminal History Category is a factor warranting departure but the defendant is already in the highest Criminal History Category (VI).... the question of proper degree of departure is solely one of reasonableness. Here, we will afford a district judge considerable leeway in determining whether the degree of departure corresponds to the number and the nature of the grounds which warrant departure." *Williams* at 1396–97 (citations omitted).

U.S.S.C. § 4A1.3 provides that a departure may be made "when the criminal history category significantly under-represents the seriousness of the defendant's criminal history or the likelihood that the

---

**5.** As noted previously, these offenses included separate instances of breaking and entering, uttering, larceny, embezzlement, as well as two

armed robberies which occurred in 1961 and 1963.

defendant will commit further crimes." However, an upward departure in the defendant's Criminal History Category is not possible because the defendant is already in the highest category.

We are of the opinion that the trial court could properly have designated the defendant as a career offender under Section 4B1.1. This section provides that a defendant who has been convicted of two or more crimes of violence and is later convicted of a third such offense can be dealt with as a career offender. But, as noted earlier in our discussion, the probation officer in his presentence report considered all six of Elmendorf's 1989 bank robbery convictions as a single conviction for purposes of computation of the defendant's criminal history and thus failed to compute in the career offender question.[6] In all probability, reliance was placed upon Application Note 3 to Guideline § 4A1.2 that provides in part that "[c]ases are considered related if they ... were consolidated for trial or sentencing." We note that the Ninth Circuit has rejected the Application Note's conclusion that two convictions, even if completely unrelated factually, may be characterized as only one conviction for career offender and criminal history purposes if they are consolidated for sentencing:

"We reject that part of Application Note 3 that suggests that cases consolidated for sentencing are to be deemed related. These application notes are not binding law, they are only advisory commentary to assist in the application of the statute. *United States v. Pinto*, 875 F.2d 143, 144 (7th Cir.1989).

"The Federal Sentencing Guidelines were enacted to provide honesty, uniformity and proportionality in sentencing. U.S. Sentencing Comm'n, Federal Sentencing Guidelines Manual, Policy Statement 1.2 (November 1, 1989). While discretion is allowed to trial judges

to deviate under certain circumstances, judges are otherwise bound to stay within a recommended range of punishment. To read into the plain meaning of the statute the inference of the application note that every time a defendant is sentenced at a single hearing for multiple convictions those convictions are related would defeat both the intent of the statute and the public policy concerns over haphazard dispensation of justice. A defendant convicted of multiple unrelated offenses who fortuitously is sentenced for all offenses by one judge at one time would subsequently face less punishment when his points are totalled than another defendant who committed the same crimes but was separately sentenced on successive days or on the same day by different judges. Aside from offending the legislative intent and public policy involved, such a result would be inequitable."

*United States v. Gross*, 897 F.2d 414, 416–17 (9th Cir.1990). Similarly, we have noted the limited weight to be accorded the commentary to the Guidelines:

"The statute authorizing the guideline system [states]: 'The court shall ... consider any pertinent policy statement issued by the Sentencing Commission ... that is in effect on the date the defendant is sentenced'. 18 U.S.C. 3553(a)(5). Courts customarily consider legislative history in interpreting statutes; on what ground would the Commission's notes, a form of 'administrative history', be off limits? Conscious of the limits of legislative history, we exercise caution in leaning on what may not be an authentic guide to meaning.... Like legislative history, the notes are not formally binding, and we would follow the text over the notes in the event of conflict...."

*United States v. Pinto*, 875 F.2d 143, 144 (7th Cir.1989) (citations omitted).[7]

---

6. Guideline Section 4B1.2 provides that in determining whether there are "two prior felony convictions" required for career offender status, it is necessary that "the sentences for at least two of the ... felony convictions [be] counted separately under the provisions of Part A of this Chapter." Under Section 4A1.2(a)(2): "Prior

sentences imposed in related cases are to be treated as one sentence for purposes of the criminal history."

7. Likewise, the commentary to the sentencing guidelines specifically notes

We agree with the reasoning of the Ninth Circuit and of our opinion in *Pinto* and conclude that a defendant's convictions for six unrelated armed and unarmed robberies that are merely consolidated for the purposes of convenience, may be counted as separate convictions for purposes of determining career offender status under Guidelines §§ 4B1.1 and 4B1.2.[8] The facts involved in the previous six armed and unarmed robbery convictions pursuant to the plea agreement may never again be the subject of a criminal charge and to confine these six separate, specific and distinct bank robbery convictions to a characterization as a single general crime conviction gives the defendant a bargain basement wholesale deal and severely undermines the criminal justice system's ability to protect society and penalize the defendant for his criminal conduct. Such a result would defeat Congress' objective in enacting the Sentencing Reform Act of 1984 of "enhanc[ing] the ability of the criminal justice system to combat crime through an effective, fair sentencing system." U.S.S.G. Ch. 1, Pt. A, intro 3.

In reaching this determination, we note that consolidation under Rule 20 is a benefit to an overloaded federal judicial system, as well as the defendant, in conserving judicial resources by requiring one proceeding rather than many. Furthermore, the government is spared the expense of transporting the defendant and subpoenaing and transporting witnesses to numerous trials in diverse localities across the country. Rule 20 likewise provides

benefits to the defendant who is then the subject of only one criminal proceeding. *See* 2 Wright, *Federal Practice and Procedure 2d* § 321 (Rule 20 "permits a speedy disposition of [defendant's] case if he desires to plead guilty without whatever hardship may be involved in transporting him back to the district in which he is charged."). The Sentencing Guidelines should not be read to permit a defendant who uses Rule 20 to gain a further benefit through treatment of a number of separate specific crimes as a single general conviction in any case where Rule 20 is used. Indeed, to interpret the Sentencing Guidelines in this manner would create a self-destructive situation where the judicial system would be impeded and brought to a standstill by overloaded court calendars as prosecutors would no longer make use of a Rule 20 consolidation procedure to increase the efficiency of the court system. As the Eleventh Circuit has stated:

"We do not believe that the Commission intended that someone with a history such as [the defendant's] should be treated as having only *one* prior conviction, solely because he is *permitted* to take advantage of Rule 20(a)'s procedural device. The practical result of such a holding likely would be that United States Attorneys would no longer agree to a Rule 20(a) consolidation. Rule 20(a) provides an efficient procedure for both defendants and prosecutors and should not be sacrificed by a literal application of the Sentencing Guidelines."

"that in seeking to understand the meaning of the guidelines courts likely will look to the commentary for guidance as an indication of the intent of those who wrote them. *In such instances, the courts will treat the commentary much like legislative history or other legal material that helps determine the intent of a drafter.*"
Sentencing Guidelines § 1B1.7, comment (emphasis added).

8. In *Williams*, the defendant asserted that the district court's enhancement of his sentence was unreasonable. We affirmed the district court's departure from the sentencing guidelines because "a sentencing judge has broad discretion to determine what Criminal History Category most accurately reflects a defendant's actual

criminal history" whenever the sentencing judge departs on the basis of an inadequate Criminal History Category. *Williams*, 901 F.2d at 1400. In *dictum*, we also noted that the district court's departure was reasonable because "Williams could have been sentenced as a career offender facing a Guideline range of 151–188 months [a range almost three times Williams' actual sentence] if he had received two separate convictions for his previous bank robberies." *Id.* We do not read *Williams* to have specifically approved Application Note 3. Thus, we view *Williams* as consistent with our determination that two or more separate convictions for factually unrelated conduct in a consolidated proceeding can provide a basis for classification as a career offender.

*United States v. Dorsey*, 888 F.2d 79, 81 (11th Cir.1989) (emphasis in original). Thus, we are convinced that if the six bank robberies that were the subject of sentencing in the prior consolidated criminal proceeding in Ohio would have been treated as separate convictions under the career offender guideline, we would have sustained the trial court in the instant case had it sentenced Elmendorf as a career offender. If there was or ever will be a career offender, the defendant Howard J. Elmendorf fits that classification.

This court faced a similar situation in *Williams*. In *Williams*, the defendant was a Category III bank robber whose Criminal History Category did not adequately reflect the seriousness of his criminal history. As a result, the district court departed from the Guidelines range on the basis of the defendant's inadequate Criminal History Category. This court affirmed the departure:

> "As we previously stated, when departing on the basis of inadequate Criminal History Category, a sentencing judge has broad discretion to determine what Criminal History Category most accurately reflects the defendant's actual criminal history. It was well within the discretion of the district judge to conclude that the consolidated state sentence and the repeat nature of bank robberies justified Williams being sentenced as a Category IV defendant rather than a Category III defendant. *Most important in this regard is that Williams could have been sentenced as a career offender facing a Guideline range of 151 to 188 months if he had received two separate convictions for his previous bank robberies.* Given this, it was certainly reasonable for the district judge to sentence Williams to 63 months."

*Williams* at 1400 (emphasis added).

Like the defendant in *Williams*, the defendant in the case before us committed a number of separate bank robberies at different times in various states which were subsequently consolidated. If not for the misguided consolidation of these bank robberies, the defendant would and should have been sentenced for the instant offense as a career offender. As a career offender in violation of a statute which provides a maximum 25 year sentence, the defendant's offense level would have been graded a level 32 (this figure represents a two-level reduction for acceptance of responsibility). *See* § 4B1.1. This level would have enabled the district court to sentence the defendant within a Guideline range of 210–262 months. This is considerably more than the 15 years (180 months) the defendant actually received for the offense. Like the defendant in *Williams*, the defendant in the case before us did not contest the accuracy of the presentence report at the time of sentencing which the district court relied on in determining the defendant's term of confinement. Thus, under the reasoning in *Williams* and with the application of common sense, the defendant's sentence is more than reasonable.

Furthermore, the defendant's criminal history does not consider the similarity between the defendant's previous conviction for the six armed and unarmed bank robberies and the charged offense of armed bank robbery: "[S]imilarity between previous convictions and the charged offense supports a finding of inadequate criminal history level." *Williams* at 1398. This particularly applies to the defendant, given his apparent addiction to robbing banks. Thus, it is clear that when considering the career offender provisions of the Sentencing Guidelines that the defendant's sentence is clearly reasonable, especially considering the fact that he might very well have been classified and sentenced as a career offender.

## IV. CONCLUSION

The acceptance of the guilty plea and the sentence imposed are

AFFIRMED.