**UNITED STATES of America, Plaintiff,**

v.

**Victor WOODS, Defendant.**

**No. 90 CR 525–3.**

United States District Court,
N.D. Illinois, E.D.

Dec. 18, 1991.

Josh Buchman, U.S. Atty., for plaintiff.

Thomas McQueen, Jenner & Block, Chicago, Ill., for defendant.

### MEMORANDUM OPINION
### AND ORDER

HOLDERMAN, District Judge:

Pursuant to Federal Rule of Criminal Procedure 32(c)(3)(D), defendant Victor Woods has moved to correct certain factual inaccuracies in the Presentence Investigation Report ("PSI"). The court already has resolved many of the issues raised by the defendant's motion. Remaining is the issue of how many criminal history points

defendant should be assessed for purposes of determining defendant's appropriate Criminal History Category under the United States Sentencing Guidelines ("USSG").

Defendant Woods is no stranger to the criminal justice system. Although only twenty-seven years old, defendant has been previously convicted in six different felony criminal cases for which he served sentences of imprisonment. Having considered defendant's prior criminal record and evaluated it in light of the law of the Seventh Circuit, the court finds that the defendant must be assessed eighteen criminal history points—three points for each of his six felony criminal convictions for which he received sentences of imprisonment.

## I. BACKGROUND FACTS [1]

According to the PSI, on six occasions prior to pleading guilty in this case defendant Woods was convicted of state felony criminal offenses. The sentences in each of these six prior cases ran concurrently with one another. The court will discuss each of those convictions in turn. The court and the parties have had access to documentation from both the state court files and law enforcement files concerning these offenses.[2]

### A. *May 21, 1983—Attempted Armed Robbery*

On May 21, 1983, Woods and three accomplices, Parker, Albert and Prince, drove to a Jewel Store located in Arlington Heights, Illinois. (Info. No. 83 C 20033401.) Woods and Prince entered the store with plastic, unloaded pellet guns, and a replica of a World War II machine gun. When the store's manager could not open the safe, all employees were locked in the meat locker. (PSI, lines 301–308.) Parker remained in the getaway vehicle. Albert remained in a vehicle monitoring a police radio scanner. (Woods' confession.)

Woods pled guilty and was found guilty of attempted armed robbery. (PSI, lines 293–295.) For purposes of sentencing, Woods' May 21 attempted armed robbery was consolidated with a June 13, 1983 robbery, discussed below. (PSI, lines 312–314.) On June 18, 1984, Judge Edward M. Fiala, Jr. of the Cook County Circuit Court sentenced Woods to four years imprisonment for the May 21, 1983 attempted armed robbery. (PSI, lines 293–300.)

### B. *May 23, 1983—Robbery*

On May 23, 1983 at 12:15 a.m., Woods, Parker and Albert committed a second robbery. Prince was not present. Woods entered a McDonald's Restaurant in Schaumburg, Illinois at closing time wearing a ski mask and armed with a plastic pellet gun. Parker and Albert waited in vehicles. Only Woods and Parker were charged. (Info. No. 83 C 3–35606.) Woods demanded and received money from the McDonald's employees. (PSI, lines 407–414.) According to Woods' confession, Albert again monitored a police radio scanner in the vehicle.

Woods was found guilty of robbery for this offense in a bench trial. (PSI, lines 400–406.) This robbery was consolidated with another robbery for purposes of sentencing—a robbery committed on May 29, 1983 and addressed below. (PSI, lines 418–420.) On July 24, 1984, Judge Rosalind M. Crandell of the Cook County Circuit Court sentenced Woods to four years imprisonment for the May 23, 1983 robbery. (PSI, lines 400–406.)

---

**1.** These background facts have been reviewed and revised by counsel for defendant Woods and the government. Defendant's counsel stated in his December 16, 1991 letter to the court, which has been made part of this record, that "[t]he Background Facts [are] ... in a form which is agreeable both to the United States and the defendant as the factual basis from which the Court should decide the remaining legal issues with respect to the defendant's Criminal History Category under the Federal Sentencing

Guidelines." 12/16/91 Letter of Defense Counsel.

**2.** At the court's request, the Probation Office provided counsel for the government, counsel for defendant Woods, and this court with copies of the documents used by the Probation Office to calculate defendant Woods' Criminal History Category.

### C. *May 29, 1983—Robbery*

On May 29, 1983, at 12:45 a.m., Woods and Prince entered a Wendy's Restaurant in Palatine, Illinois. Wearing ski masks and armed with pellet guns, the two men demanded and received money from Wendy's employees. (PSI, lines 324–330.) According to Woods' confession, Parker, Albert and Cliff Hurd waited in vehicles outside monitoring police radio scanners. Parker was charged with Woods and Prince. (Info. No. 83 C 3–35416.)

Woods was found guilty of robbery in a bench trial. (PSI, lines 317–323.) As noted above, this May 29 robbery was consolidated with the May 23 robbery for purposes of sentencing. (PSI, lines 418–420.) On July 24, 1984, Judge Crandell sentenced Woods to four years imprisonment for the May 29, 1983 robbery. (PSI, lines 317–323.)

### D. *June 13, 1983—Robbery*

On June 13, 1983, Woods, Parker and Prince drove to a Show Biz Pizza restaurant in Arlington Heights, Illinois. Parker served as the driver monitoring Albert's police radio scanner. Woods and Prince entered the store, again armed with plastic pellet guns. They robbed the manager of over $10,000.00. (PSI, lines 268–273.) According to Woods' confession, Hurd had "cased" the Show Biz location and one of Prince's friends, Matt Shields, had provided the group with information about the restaurant.

Woods was found guilty of robbery in a bench trial. (Docket Sheet 83 C 20033301.) As discussed above, this robbery was consolidated with the May 21 robbery for purposes of sentencing. (PSI, lines 312–314.) On June 18, 1984, Judge Fiala sentenced Woods to four years imprisonment for the June 13, 1983 robbery. (PSI, lines 259–267.)

### E. *March 11, 1984—Robbery and Unlawful Restraint*

On March 11, 1984, at 7:15 p.m., Woods and four other men committed a robbery.

Woods remained outside while three of his accomplices, armed with a .38 calibre revolver and a pellet gun, approached two employees of an Eagle Food Store in Buffalo Grove, Illinois.[3] (Complaint No. 842001139801.) Arthur Soteras, Jerome Walls and William Johnson were charged with Woods. (Indictment No. 84–5029.)

The employees were ordered back into the store. One employee was ordered to lie face down on the floor. The other employee was led to the safe and ordered to open it. The defendants then took $350.00 in cash and change from the safe. (PSI, lines 361–366; Complaint, *supra.*)

Woods pled guilty and was found guilty of two counts of robbery and two counts of unlawful restraint for this offense. (PSI, lines 335–339.) On December 11, 1984, Judge Nicholas T. Pomaro of the Cook County Circuit Court sentenced Woods to four years imprisonment for the robbery convictions, and three years concurrent imprisonment for the unlawful restraint convictions. (PSI, lines 339–354.)

### F. *March 18, 1984—Attempted Armed Robbery*

On March 18, 1984, Woods attempted another armed robbery. On that date Woods was in a Mercedes Benz automobile with co-defendants Michael Dale and Arthur Soteras outside a Jewel–Osco Store in Buffalo Grove, Illinois. Co-defendants William Johnson and Jerome Walls and three juveniles waited in a Ford Bronco. The occupants of the two vehicles communicated through walkie-talkies. (PSI, lines 384–390; Buffalo Grove Police Report at 2–6.)

The men in the Mercedes then had the juveniles exit the Ford Bronco with ski masks and guns. The juveniles put a gun to the back of a store employee in an attempt to enter the store. The store had just closed, however, and was locked up. Thus, the juveniles were unable to complete the robbery. (PSI, lines 390–394.) The defendants were arrested by a task

---

**3.** According to Woods, his accomplices for this robbery were Michael Dale, Arthur Soteras, William Johnson and Jerome Walls—four of the men who also accompanied him on a March 18, 1984 attempted robbery, discussed below. (Def. Objections Mem. at 13.)

force of local police surveilling their movements. (Buffalo Grove Police Report at 1.)

Woods pled guilty and was found guilty of attempted robbery. (PSI, lines 371–373.) On June 28, 1984, Judge William D. Block of the Lake County Circuit Court[4] sentenced Woods to four years imprisonment for this March 18, 1984 attempted armed robbery. (PSI, lines 373–383.)

Woods was received at the Illinois Department of Corrections from the Cook County Department of Corrections on December 14, 1984, for all of the above charges, with time considered served since March 18, 1984. Woods was discharged on January 3, 1986. (PSI, lines 431–439.)

## II. DISCUSSION

The defendant argues that based upon this criminal history he should be assessed six criminal history points under the USSG. Invoking Application Note 3 to USSG § 4A1.2, defendant asserts that this court should assess a total of three criminal history points for the 1983 sentences and another three criminal history points for the 1984 sentences.

USSG § 4A1.2(a)(2) provides that prior sentences imposed in "unrelated cases" are to be counted separately for purposes of a defendant's criminal history. Prior sentences imposed in "related cases," however, are to be treated as one sentence for purposes of the criminal history. U.S.S.G. § 4A1.2(a)(2). Application Note 3 to USSG § 4A1.2 elaborates on the term "related cases":

> Cases are considered related if they (1) occurred on a single occasion, (2) were part of a single common scheme or plan, or (3) were consolidated for trial or sentencing.

U.S.S.G. § 4A1.2, comment. (n.3)

The first category of "related" cases—cases occurring on a "single occasion"—is inapplicable here. All six prior sentences imposed on defendant resulted from crimes which he committed on six different occa-

sions. Defendant does not argue otherwise.

■ At first glance it would appear that the third category of "related" cases—cases "consolidated for trial or sentencing"—works in defendant's favor. After all, the state court consolidated defendant's May 21, 1983 attempted armed robbery conviction with his June 13, 1983 robbery conviction for purposes of sentencing. Similarly, the court consolidated defendant's May 23, 1983 and May 29, 1983 robbery convictions for purposes of sentencing.

This court rejects, however, the notion that cases are related solely because they were consolidated for sentencing. This court's view is supported by the recent case of *United States v. Elmendorf*, 945 F.2d 989 (7th Cir.1991). In *Elmendorf* the Seventh Circuit Court of Appeals, in addressing the issue of career offender status under the guidelines, rejected the part of Application Note 3 to USSG § 4A1.2 that suggests that cases consolidated for sentencing are to be deemed related. *Id.* at 997–98, *quoting United States v. Gross*, 897 F.2d 414, 416–17 (9th Cir.1990). As the Seventh Circuit stated:

> To read into the plain meaning of the [Federal Sentencing Guidelines] the inference of the application note that every time a defendant is sentenced at a single hearing for multiple convictions those convictions are related would defeat both the intent of the statute and the public policy concerns over haphazard dispensation of justice. A defendant convicted of multiple unrelated offenses who fortuitously is sentenced for all offenses by one judge at one time would subsequently face less punishment when his points are totalled than another defendant who committed the same crimes but was separately sentenced on successive days or on the same day by different judges. Aside from offending the legislative intent and public policy involved, such a result would be inequitable.

---

**4.** The Eagle Food Store that Woods robbed on March 11, 1984, was in a portion of Buffalo Grove, Illinois located in Cook County, Illinois. The Jewel–Osco Store which Woods attempted to rob on March 18, 1984, was in a part of Buffalo Grove located in Lake County, Illinois.

*Elmendorf,* 945 F.2d at 997, *quoting Gross,* 897 F.2d at 416–417.

Given that Application Note 3 is not formally binding and applying the holding of *Elmendorf,* this court analyzes the facts underlying defendant Woods' six prior convictions without applying a presumption that certain convictions were related simply because they were consolidated for purposes of sentencing.

■ This leaves us with the second category of "related" cases suggested by Application Note 3—cases which were part of a "single common scheme or plan." The court finds this description helpful in determining relatedness. Upon review of relevant case law, the court considers the existence of a single common scheme or plan along with several other factors in determining whether Woods' prior convictions indeed are related. The facts which this court considers relevant to a relatedness determination are:

(1) when the underlying crimes occurred;

(2) where the crimes occurred;

(3) the nature of the crimes;

(4) the perpetrators of the crimes;

(5) the victims of the crimes;

(6) the modus operandi of the crimes;

(7) evidence of common scheming or planning of the crimes.

None of these facts in isolation guides this court. Instead, the court has analyzed each set of facts in the context of the crimes viewed as a whole. Such analysis convinces the court that Woods' six prior convictions are unrelated.

### A. When the Underlying Crimes Occurred

Woods committed the first four of his six relevant crimes between May 21 of 1983 and June 13 of 1983. He committed the last two crimes on March 11, 1984 and March 18, 1984, respectively. Unsurprisingly, Woods argues that the four 1983 crimes are related and that the two 1984 crimes are related, resulting in a total assessment of six criminal history points.

Woods' May 21, 1983 crime and his May 23, 1983 (12:15 a.m.) indeed are close in time. This fact militates in favor of a finding of relatedness for those two crimes only. *But see United States v. Jones,* 899 F.2d 1097, 1101 (11th Cir.1990) (court not clearly erroneous in finding a bank robbery and attempted bank robbery which were separated by one and one-half hours to be unrelated). Woods' other crimes, however, are too far apart in time to suggest relatedness.

### B. Where the Crimes Occurred

The location of the four 1983 crimes counsels firmly against a finding of relatedness. Woods and his accomplices traveled throughout the Chicago suburbs committing the crimes: first to Arlington Heights, then to Schaumburg, then to Palatine, and finally back to Arlington Heights. As to the two 1984 crimes, however, Woods and a different set of accomplices committed both crimes in Buffalo Grove. The fortuity that the crimes were committed on different sides of the Cook and Lake County lines does not in itself mean that the 1984 crimes were unrelated.

### C. The Nature of the Crimes

The common nature of the crimes supports defendant's argument of relatedness. All six of Woods' convictions were robbery-related: he committed three robberies, two attempted armed robberies, and a robbery in combination with unlawful restraint.

### D. The Perpetrators of the Crimes

The identity of the perpetrators of the crimes supports somewhat defendant's argument on relatedness. Parker accompanied Woods on all of the four 1983 robberies. Albert and Prince each joined Woods and Parker for three of the 1983 robberies. Hurd, however, was involved only in two of the robberies. Shields only in one.

There was a substantial identity of perpetrators involved in the 1984 crimes. Dale, Soteras, Johnson and Walls accompanied Woods on both robberies. The three juveniles participated in (and played a key role in) only the lattermost robbery.

### E. *The Victims of the Crimes*

The separate and distinct victims of the crimes, though, strongly suggests that the crimes were not related. The victims of the 1983 crimes were employees of a Jewel Store, a McDonald's, a Wendy's, and a Show Biz Pizza. The victims of the 1984 crimes were an Eagle Food Store and a Jewel/Osco Store. The only commonality as to these victims is that, as fast food restaurants and food stores, the victims all were convenient targets of robberies. This commonality does not strongly suggest relatedness.

### F. *The Modus Operandi of the Crimes*

Focusing on the repeated use of the same weapons and a police scanner radio, Woods makes much of what he considers to be common modus operandi of the various crimes. In each crime except for the final attempted armed robbery, Woods and his accomplices used a plastic pellet gun to coerce employees to turn over money. On May 21, 1983 Woods and his accomplices also used a replica of a World War II machine gun. On March 11, 1984, Woods and/or his accomplices also used a "real" gun—a .38 calibre revolver. On the final attempted armed robbery, March 18, 1984, Woods and/or his accomplices used only "real" guns.

The mere repeated use of plastic pellet guns in connection with five separate robberies hardly reflects a common modus operandi sufficient to indicate that crimes are related. On the contrary, in this case such repeated use more likely reflects merely that plastic pellet guns were either handy or preferred by Woods in committing his crimes (preferred perhaps because of a perceived lesser punishment should Woods be caught with a plastic pellet gun than with a "real" gun).

It is true that Woods' accomplices used a police scanner to monitor police communications during the course of their four 1983 robberies. Again, however, the mere use of a police scanner hardly rises to the level of a common modus operandi such that crimes should be deemed related. Use of a scanner indicates simply the availability and effectiveness of such a device.

It is as likely that a criminal will use the same weapon or the same anti-detection device to commit several separate and distinct crimes as to commit related crimes. Accordingly, the repeated use by Woods and his accomplices of plastic pellet guns and a police radio scanner does not reflect a common modus operandi sufficient to suggest that the crimes at issue were related.

### G. *Common Scheming or Planning of the Crimes*

Finally, and importantly, there is absolutely no evidence that Woods and his accomplices developed a common scheme or plan for any of the various crimes.

There is no indication that Woods and his accomplices sat down prior to May 21, 1983 and decided to rob various fast food restaurants and food stores using plastic pellet guns and police scanners. Hence, there is no indication that Woods had planned this series of criminal activity.

On the contrary, the separate dates, locations, and victims of the 1983 crimes suggest to this court that Woods and his accomplices simply were encouraged by the promise or success of each separate and distinct robbery and then merely decided to try it again. The same can be said for the two 1984 robberies. The total lack of any evidence of common planning or scheming relative to the various robberies strongly favors a finding of non-relatedness.

In summary, weighing all of the relevant factors and viewing the crimes as a whole, the court finds defendant Woods' six prior convictions to be unrelated. Accordingly, Woods' six prior convictions must be counted separately for purposes of determining his criminal history category.

Consequently, this court will assess defendant Woods eighteen criminal history points—three points for each of his six prior sentences of imprisonment. The result is a Criminal History Category of VI.

## III. CONCLUSION

For the reasons stated in this memorandum opinion and order: (1) defendant Woods is assessed eighteen criminal history points for six of his prior convictions, resulting in a Criminal History Category of VI; and (2) defendant Woods' sentencing has been set for December 23, at 10:00 a.m.