**UNITED STATES of America,
Plaintiff–Appellee,**

v.

**Victor WOODS, Defendant–Appellant.**

No. 92–1016.

United States Court of Appeals,
Seventh Circuit.

Argued June 12, 1992.
Decided Oct. 6, 1992.

Barry R. Elden, Asst. U.S. Atty., Criminal Receiving, Appellate Div., Joseph D. Heyd (argued), U.S. Court of Appeals, Seventh Circuit, Chicago, Ill., for plaintiff-appellee.

Thomas K. McQueen (argued), Jenner & Block, Chicago, Ill., for defendant-appellant.

Before CUMMINGS and MANION, Circuit Judges, and GORDON, Senior District Judge.*

CUMMINGS, Circuit Judge.

Defendant Victor Woods received a 78–month prison sentence after pleading guilty to one count of conspiracy in connection with the possession and use of stolen credit cards, 18 U.S.C. § 371, and one count of possessing counterfeit access device-making (credit card-making) equipment, 18 U.S.C. § 1029(a)(4). On appeal, he raises several objections to his sentence.

## I.

In November 1989, approximately 4,000 unembossed Visa Gold credit cards were stolen from a freight platform in Chicago. Woods obtained possession of these stolen credit cards in January 1990, and conspired with a number of co-conspirators, including Woods' co-defendant and girlfriend Anne Hemesath, to possess, emboss, use, and sell the stolen cards. To facilitate the use of the cards, Woods and his co-conspirators in March 1990 stole a credit card embossing machine from a YMCA in Des Plaines, Illinois. Woods then fraudulently obtained credit card information from approximately 80 credit card accounts held by First Card, a division of First National Bank of Chicago.

Armed with this information and the embossing machine, Woods and his cohorts began in May 1990 to imprint the First Card accounts onto the unembossed stolen credit cards and then to use the cards for purchases. Over $170,000 in unauthorized purchases were made on the stolen credit cards. Woods also tried to sell some of the credit cards, individually and in bulk. On July 6, 1990, an undercover Secret Service officer arrested Woods and Hemesath when they asked for payment of $30,000 for the prior delivery of 700 unembossed stolen credit cards pursuant to a "sting" operation.

A superseding indictment returned on November 27, 1990, ultimately charged twelve defendants for criminal violations related to this scheme. Charges against Woods included conspiracy under 18 U.S.C. § 371, possession of goods stolen from interstate shipment under 18 U.S.C. § 659, and five counts of possessing, using, or trafficking in credit cards and equipment to make credit cards under 18 U.S.C. § 1029.

On February 27, 1991, Woods entered into a written plea agreement, and the district court accepted his plea on that date. Woods pleaded guilty to the conspiracy count and one count relating to the use of a credit card-making device. In the plea agreement, the government and Woods agreed that his adjusted offense level under the Sentencing Guidelines was 15, based upon a base offense level of 6 under Section 2F1.1(a), 7 points for financial loss under Section 2F1.1(b)(1)(H), and a 2–point enhancement for more than minimal planning under Section 2F1.1(b)(2)(A). It was also agreed that Woods should receive a 3–point enhancement for serving as a manager or supervisor of criminal activity involving five or more persons under Section 3B1.1(b). The plea agreement specified that Woods was entitled to a 2–point reduction for acceptance of responsibility and therefore calculated Woods' total offense

* The Honorable Myron L. Gordon, Senior District Judge for the Eastern District of Wisconsin, is sitting by designation.

level to be 16. The agreement acknowledged that the calculations were preliminary and subject to the probation officer's investigation and the district court's determination of the facts and the applicable law. The agreement also noted that the parties had reached no agreement on the proper criminal history category for Woods.

Woods was permitted to remain released on bond until sentencing. On April 26, 1991, however, Woods' bond was revoked after an emergency hearing where Judge Holderman found that Woods had threatened Hemesath because of her cooperation with government officials. On December 23, 1991, at the fifth hearing concerning Woods' sentence, Judge Holderman sentenced Woods to 78 months in prison.

In accordance with its earlier written opinion, *United States v. Woods*, 780 F.Supp. 1201 (N.D.Ill.1991), the district court stated that Woods' six prior state felony convictions were not related and therefore concluded that he merited 18 criminal history points, resulting in a Criminal History Category of VI. The district court also assessed a 2–level increase for obstruction of justice under Guidelines Section 3C1.1 and denied a 2–level reduction for acceptance of responsibility under Section 3E1.1(a). Woods appeals these three decisions of the district court.

## II.

The first issue regards the calculation of Woods' criminal history points and revolves around Guidelines Section 4A1.2(a)(2). In the district court, Woods and the government agreed upon the background facts surrounding Woods' six prior felony convictions. See *Woods*, 780 F.Supp. at 1202 n. 1. The summary of these convictions that follows is gleaned from the reported opinion cited above, which may be consulted for more detail.

 Woods was involved in four robberies or attempted robberies in May and June 1983. On May 21, 1983, Woods and three accomplices attempted to rob a Jewel grocery store located in Arlington Heights, Illinois. They used plastic, unloaded pellet guns and a replica of a World War II machine gun in the course of the unsuccessful robbery. One person remained in the get-away vehicle, and another monitored a police radio scanner. On May 23, 1983, Woods and two of the three accomplices from the May 21 attempted robbery successfully robbed a McDonald's restaurant in Schaumburg, Illinois, again using a plastic pellet gun. One person also monitored a police radio scanner in the vehicle. On May 29, 1983, Woods and four accomplices (the three May 21 accomplices plus a new one) robbed a Wendy's restaurant in Palatine, Illinois. On June 13, 1983, Woods and two of his confederates robbed a Show Biz Pizza restaurant in Arlington Heights, Illinois.

Woods pleaded guilty to the attempted robbery of May 21, 1983, and was found guilty of the other three robberies in separate bench trials. The May 21 and the June 13 convictions were consolidated for the purpose of sentencing. On June 18, 1984, Judge Fiala of the Cook County Circuit Court sentenced Woods to four years' imprisonment for these two convictions. In addition, the May 23 and May 29 convictions were consolidated for the purpose of sentencing before Judge Crandell of the Cook County Circuit Court, who sentenced Woods to four years' imprisonment for those two crimes.

On March 11, 1984, Woods and four other persons (not his 1983 confederates) robbed an Eagle Food Store in Buffalo Grove, Illinois. On March 18, 1984, Woods and some of his allies from the March 11 robbery attempted to rob a Jewel–Osco grocery store also in Buffalo Grove. This time Woods' luck ran out and he was arrested. Woods pleaded guilty to two counts of robbery and two counts of unlawful restraint in connection with the March 11 incident, and on December 11, 1984, Judge Pomaro of the Cook County Circuit Court sentenced Woods to four years' imprisonment for the robbery convictions, and three years' concurrent imprisonment for the unlawful restraint convictions. Woods pleaded guilty to attempted robbery in connection with the March 18 arrest, and on

June 28, 1984, Judge Block of the Lake County Circuit Court [1] sentenced Woods to four years' imprisonment for the March 18 attempted robbery.

The question regarding Woods' criminal history is whether certain of Woods' prior convictions were "related" as that term is used in Guidelines Section 4A1.2(a)(2).[2] Application note 3 to that Section states that:

> [P]rior offenses are considered related if they resulted from offenses that (1) occurred on the same occasion, (2) were part of a single common scheme or plan, or (3) were consolidated for trial or sentencing.

The district court held that none of Woods' six prior convictions for robbery or attempted robbery were related. The court relied upon our recent decision in *United States v. Elmendorf*, 945 F.2d 989 (7th Cir.1991), certiorari denied, — U.S. —, 112 S.Ct. 990, 117 L.Ed.2d 151 (1992), to conclude that the fact that certain of the convictions were consolidated for sentencing was not determinative, despite the apparent meaning of the application note. *Woods*, 780 F.Supp. at 1204–1205. The court also held that none of the offenses could be considered part of a common scheme or plan or otherwise related. *Id.* at 1206.

Woods argues that the court's finding that his prior offenses were not part of a common scheme or plan was erroneous. A preliminary question is the proper standard of review. This case involves the application of a Sentencing Guideline provision to stipulated facts. As has been noted on several occasions, this Circuit has not yet determined the proper standard of review in this situation. *United States v. Brown*, 962 F.2d 560, 565 (7th Cir.1992); *United States v. Ali*, 951 F.2d 827 (7th Cir.1992). Once again we defer that decision for another day, because here Woods states that the clearly erroneous standard is proper.

Woods argues that the district court should have found a common scheme or plan tying together his 1983 offenses, and that it should have found a separate scheme or plan tying together his 1984 offenses. We conclude, however, that the district court did not clearly err when it decided that there was no common scheme or plan underlying either group of convictions. The court noted:

> [T]here is absolutely no evidence that Woods and his accomplices developed a common scheme or plan for any of the various crimes. There is no indication that Woods and his accomplices sat down prior to May 21, 1983 and decided to rob various fast food restaurants and food stores using plastic pellet guns and police scanners. * * * On the contrary, the separate dates, locations, and victims of the 1983 crimes suggest to this court that Woods and his accomplices simply were encouraged by the promise or success of each separate and distinct robbery and then merely decided to try it again. The same can be said for the two 1984 robberies.

*Woods*, 780 F.Supp. at 1206. These statements are in accord with our observation that " 'scheme' and 'plan' are words of intention, implying that [the separate crimes] have been jointly planned, or at least that it has been evident that the commission of one would entail the commission of the other as well." *Ali*, 951 F.2d at 828.

■ Here, in addition to failing to present evidence of a common scheme at his sentencing hearing, Woods does not suggest any overarching goal behind any supposed scheme. Our review of his written confessions in the 1983 robberies supports a finding that the robberies were spur-of-the-moment decisions based on a lack of funds, and that no common plan underlay them. R. 204 at 2–3. Even if Woods "planned" to rob as many food stores and

---

1. The Eagle Food Store that Woods robbed on March 11, 1984, was in a portion of Buffalo Grove, Illinois located in Cook County, Illinois. The Jewel–Osco Store which Woods attempted to rob on March 18, 1984, was in a part of Buffalo Grove located in Lake County, Illinois.

2. Guidelines Section 4A1.2(a)(2) states that "Prior sentences imposed in unrelated cases are to be counted separately. Prior sentences imposed in related cases are to be treated as one sentence for purposes of § 4A1.1(a), (b), and (c)."

restaurants as he could, we do not think this is the type of *"common* scheme or plan" that was intended by the Sentencing Guidelines to support a finding that cases were related. As the Second Circuit recently explained,

> [T]he term "single common scheme or plan," must have been intended to mean something more than simply a repeated pattern of criminal conduct. * * * The mere fact * * * that, in engaging in a pattern of criminal behavior, the defendant has as his purpose the acquisition of money to lead a particular lifestyle does not mean * * * that he had devised a single common scheme or plan * * *.

*United States v. Chartier*, 970 F.2d 1009, 1016 (2nd Cir.1992). See also *Brown*, 962 F.2d at 565 (affirming district court's holding that two prior bank robberies eight days apart were not part of a common scheme or plan); *United States v. Rivers*, 929 F.2d 136, 139–140 (4th Cir.) (reversing as clearly erroneous district court's conclusion that two prior gas station robberies were committed pursuant to a single plan to rob gas stations to obtain money to buy drugs), certiorari denied, — U.S. —, 112 S.Ct. 431, 116 L.Ed.2d 451 (1991); *United States v. Jones*, 899 F.2d 1097, 1101 (11th Cir.) (affirming district court's finding that two prior bank robberies committed ninety minutes apart were not part of a common scheme or plan), certiorari denied, — U.S. —, 111 S.Ct. 275, 112 L.Ed.2d 230 (1990); *United States v. Kinney*, 915 F.2d 1471, 1472 (10th Cir.1990) (affirming district court's holding that bank robberies two months apart were not part of a common scheme or plan).[3] Although we do not hold as a matter of law that convictions that can be characterized as arising from a "crime spree" can never be related, the burden is appropriately on the defendant to show the existence of a common scheme or plan in such cases. *United States v. Butler*, 970 F.2d 1017 (2nd Cir.1992). Since Woods has

not presented any evidence of a common scheme or plan, and because his crimes were not so similar or so temporally related to be otherwise considered related, we affirm the district court's finding that Woods' prior convictions were not related.

Woods also asks us to reconsider our decision in *Elmendorf*, at least insofar as it concluded that prior sentences should not be considered related simply because they were consolidated for trial or sentencing. *Elmendorf* stated that the portion of application note 3 that suggests otherwise should not be followed, asserting that:

> [T]o confine these six separate, specific and distinct bank robbery convictions to a characterization as a single general crime conviction gives the defendant a bargain basement wholesale deal and severely undermines the criminal justice system's ability to protect society and penalize the defendant for his criminal conduct. Such a result would defeat Congress' objective in enacting the Sentencing Reform Act of 1984 of "enhanc[ing] the ability of the criminal justice system to combat crime through an effective, fair sentencing system." U.S.S.G. Ch. 1, Pt. A., intro 3.

945 F.2d at 998.[4]

We wholeheartedly agree with the sentiments expressed in *Elmendorf*. The November 1, 1991, amendments to the text and the notes of the Guidelines, made after *Elmendorf* was decided, make it clear, however, that prior sentences which are consolidated for trial or sentencing are deemed "related" for the purposes of calculating a defendant's criminal history. Although we might disagree with such a broad definition of relatedness, it is the definition that has been adopted in the Guidelines.

Sentencing in this case took place on December 23, 1991, after the November amendments. Although the district court

---

**3.** In addition, this Court in *Elmendorf* concluded that six bank robberies committed over a 40–day period were "separate, specific and distinct" and presumably would not have considered them part of a common scheme or plan. 945 F.2d at 998.

**4.** The specific issue raised in *Elmendorf* was the propriety of the district court's decision to depart from the guidelines. The government did not cross-appeal the district court's decision to consider Elmendorf's prior convictions related.

did not indicate specifically that it was applying the amended guidelines, under 18 U.S.C. § 3553(a)(4) courts apply the guidelines "in effect on the date the defendant is sentenced." We therefore assume that the court applied the amended guidelines and also base our analysis on these guidelines. Under Section 4A1.2, "related" cases count as one prior sentence for the purposes of calculating a defendant's prior criminal history. The unadorned use of the term "related" in the text of Section 4A1.2 leaves open the kind and degree of relatedness between prior convictions necessary for a defendant's prior sentences to be counted as one sentence. Before November 1, 1991, the only guidance was application note 3, which advised courts to consider prior sentences related if they occurred on the same occasion, were part of a single common scheme or plan, or were consolidated for trial or sentencing.

In *Elmendorf,* we stated that this last part of the application note should not be followed, at least when it applied to a criminal spree where each crime involved a separate victim, without further indication that this is what Congress and the Sentencing Commission intended. Although we still believe that treating crimes as "related" simply because they were consolidated for trial or sentencing is misguided, the recent Guideline amendments now establish this result.

One of the November 1, 1991, amendments added part (f) to Section 4A1.1, which provides for additional criminal history points (up to three) when crimes of violence are considered related, unless "the sentences are considered related because

the offenses occurred on the same occasion." This latter exception is a direct reference to the definition of relatedness in application note 3 of Section 4A1.2, and is strong evidence that note 3 is considered an integral part of the Guidelines. Two new examples in the application notes also show that cases that are consolidated for sentencing are meant to be considered related. Recently added application note 6 of Section 4A1.1 is quite similar to our case:

> For example, a defendant's criminal history includes two robbery convictions for offenses committed on different occasions *that were consolidated for sentencing and therefore are treated as related.* * * *

(emphasis added). Likewise, application note 3 of Section 4A1.2 now contains the following example:

> For example, *if a defendant was convicted of a number of serious non-violent offenses committed on different occasions, and the resulting sentences were treated as related because the cases were consolidated for sentencing,* the assignment of a single set of points may not adequately reflect the seriousness of the defendant's criminal history or the frequency with which he has committed crimes.

(emphasis added). Given these additions to the Guidelines text and the application notes, a defendant's prior sentences that have been consolidated for trial or sentencing must be considered related under Section 4A1.2. Language in *Elmendorf* to the contrary should be limited to cases arising under prior versions of the Sentencing Guidelines.[5]

---

5. Although we rely on the amended guidelines, we note that the Ninth Circuit has recently overruled *United States v. Gross,* 897 F.2d 414 (9th Cir.1990), the only case upon which *Elmendorf* relied. *United States v. Anderson,* 942 F.2d 606, 614 n. 5 (9th Cir.1991) (indicating that *Gross* should not be followed); *United States v. Palmer,* 946 F.2d 97, 99 (9th Cir.1991) (overruling *Gross* ); *United States v. Fine,* 946 F.2d 650, 653–654 (1991) (same), rehearing en banc granted, 963 F.2d 1258 (9th Cir.1992).

In addition, two decisions of this Court concerning relatedness decided after *Elmendorf* contain language that seems inconsistent with that case. See *United States v. Connor,* 950 F.2d

1267, 1270 (7th Cir.1991) (noting "that if all these offenses had been federal offenses the cases would have been consolidated for trial and deemed related for that reason."); *Ali,* 951 F.2d at 827–828 ("The official commentary to the guidelines deems cases 'related' that occurred on a single occasion, or were consolidated for trial or sentencing, or were part of a 'single common scheme or plan.' * * * The robbery and forgery were committed on different days and the prosecutions were not consolidated either for trial or for sentencing, so the question is whether they were part of a single scheme or plan."). In *Brown,* 962 F.2d at 565 n. 7, we did note that *Elmendorf* stated that "even

■ This conclusion is consistent with our understanding of the proper role of the application notes in the interpretation of the Sentencing Guidelines. Application notes are entitled to substantial weight, *United States v. Valencia,* 913 F.2d 378, 384 (7th Cir.1990), and should be followed unless they conflict with the text. *United States v. Pinto,* 875 F.2d 143, 144 (7th Cir.1989) (text should be followed over notes in case of conflict). In general, it is more appropriate to rely on the notes than on legislative history, because the notes are approved by the entire Commission and because both the text of the Guidelines and the notes are presented to Congress in a single package for approval. *Id.; United States v. Anderson,* 942 F.2d 606, 611 (9th Cir.1991) (en banc). Although the definition of related cases in the application note is broad, we do not think that it conflicts with the text of the Guideline.

The Guidelines ameliorate any undesirable effects of their broad definition of related cases in several ways. First, application note 3 specifically states that departure may be appropriate:

The court should be aware that there may be instances in which this definition is overly broad and will result in a criminal history score that underrepresents the seriousness of the defendant's criminal history and the danger that he presents to the public. For example, if a defendant was convicted of a number of serious non-violent offenses committed on different occasions, and the resulting sentences were treated as related because the cases were consolidated for sentencing, the assignment of a single set of points may not adequately reflect the seriousness of the defendant's criminal history or the frequency with which he has committed crimes.

Note 3 also states (in another sentence added in the November 1991 amendments)

that if the criminal conduct is separated by arrests, the ensuing convictions are never considered related even if consolidated for trial or sentencing. Finally, as noted above, Section 4A1.1(f) provides for a specific enhancement if violent crimes are considered related because they were consolidated for trial or sentencing.[6]

■ Although the district court erred by not counting two pairs of Woods' prior convictions as related, this error was harmless because a proper application of the amended guidelines to the stipulated facts would have resulted in the same sentencing range. Woods' May 21, 1983, and June 13, 1983, convictions should have been considered related because they were consolidated for sentencing. The same is true for his May 23, 1983, and May 29, 1983, convictions. The 1984 convictions were not consolidated for sentencing and therefore need not be treated as related—we reject any argument that these convictions "would have been" consolidated except for the fortuity that they occurred on different sides of a county line. We decline to expand an already broad definition of "related." *United States v. Brown,* 962 F.2d 560, 565 (7th Cir.1992).

Thus Woods should have received 12 points for his prior convictions (4 convictions worth 3 points each). Since the related crimes were robberies or attempted robberies, they were crimes of violence under Section 4B1.2, and therefore Section 4A1.1(f) applies. Under Section 4A1.1(f), 2 points would be added to Woods' criminal history points, for a total of 14. This places Woods in Criminal History Category VI, which is the same category in which the district court placed him, and therefore subjects him to the same sentencing range. Therefore, no remand is necessary despite the district court's decision that none of Woods' prior convictions should be deemed

consolidated cases are not necessarily related for purposes of the career offender determination."

**6.** We also note that simply because a defendant is sentenced in two separate cases on the same day to concurrent sentences does not, absent a

specific order of consolidation, mandate a finding that the cases were consolidated. *United States v. Rivers,* 929 F.2d 136, 141 (4th Cir.1991); *United States v. Garcia,* 962 F.2d 479, 483 (5th Cir.1992).

related.[7]

### III.

■ Because it was not clearly erroneous, we affirm the district court's decision to enhance Woods' offense level by two points for obstruction of justice. Under Section 3C1.1 of the Guidelines, two points should be added to a defendant's offense level "[i]f the defendant wilfully obstructed or impeded, or attempted to obstruct or impede, the administration of justice during the investigation, prosecution, or sentencing of the instant offense." Here Woods' bond was revoked on April 26, 1991, based on the testimony of Woods' girlfriend and co-defendant Anne Hemesath, which the district court credited. Hemesath testified that on April 22, 1991, Woods told her the following:

I know that you have tried to get me to buy a gun so that I could have another felon case. I know that you have cooperated with the FBI, I know that you have told them about Randy Klein, my alias, and you are less than a whore, and you don't deserve to live, you are evil, and you haven't seen evil until you see what I'm going to do.

Two days after this conversation, on April 24, 1991, Woods told the investigating probation officer that he wished Hemesath "no ill will." The district court found that Woods' threat "indicate[d] a clear intent to willfully obstruct justice and attempt to do so in connection with the prosecution of the case against him, which includes the sentencing process."

■ Application note 3 to Section 3C1.1 states that the enhancement applies to "conduct prohibited by 18 U.S.C. §§ 1501–1516." When Woods' bond was revoked, the district court found probable cause that Woods had violated 18 U.S.C. § 1513, the witness retaliation statute. Thus the obstruction of justice enhancement is appropriate. Although Woods argues that his

case and the cases of his co-defendants were essentially over, the enhancement applies to obstruction of the sentencing process as well as to obstructive activities before and during trial. Here Woods threatened Hemesath in the midst of the pre-sentencing investigation, and it was proper for the district court to conclude that one purpose of the threats was to thwart Hemesath's further cooperation with government officials.

### IV.

■ We also affirm the district court's decision not to give Woods a 2–point reduction for acceptance of responsibility. Section 3E1.1 states that the offense level should be reduced "[i]f the defendant clearly demonstrates a recognition and affirmative acceptance of personal responsibility for his criminal conduct." Application note 4 states that "[c]onduct resulting in an enhancement under § 3C1.1 (Obstructing or Impeding the Administration of Justice) ordinarily indicates that the defendant has not accepted responsibility for his criminal conduct. There may, however, be extraordinary cases in which adjustments under both §§ 3C1.1 and 3E1.1 may apply." In addition, under application note 5 "[t]he sentencing judge is in a unique position to evaluate a defendant's acceptance of responsibility. For this reason, the determination of the sentencing judge is entitled to great deference on review."

Given our deferential standard of review, we do not think this is an "extraordinary" case where acceptance of responsibility is appropriate despite the proper obstruction of justice enhancement. Threatening a co-defendant because of her cooperation with the government is not consistent with a finding that a defendant has clearly accepted personal responsibility for his crimes. The record also reveals that, despite having received a 3–point enhancement as a manager or supervisor of more than five persons under the Guidelines, Woods refused

---

**7.** Because we consider *Elmendorf* to be a correct statement of law with regard to the pre-amended guidelines (and are therefore not circulating this opinion to the full Court under Circuit Rule 40(f)), Woods would also have been in Criminal History Category VI under our interpretation of those guidelines. Therefore applying the amended guidelines to Woods does not create an *ex post facto* problem.

to acknowledge responsibility for his leadership role in the criminal activities. R. 229 at 22. ("I got involved in this conspiracy because of my greed * * *, but everyone else involved in this conspiracy also got involved because of their greed, and a lot of people have sought to shift this weight upon me, and I don't believe that that's fair * * *."). Therefore, the district court properly denied an acceptance of responsibility reduction.

For the foregoing reasons, the defendant's sentence is affirmed.