142 F.3d 440
 NOTICE: Seventh Circuit Rule 53(b)(2) states unpublished orders shall not be cited or used as precedent except to support a claim of res judicata, collateral estoppel or law of the case in any federal court within the circuit.
UNITED STATES of America, Plaintiff-Appellee,
v.
Luis E. GARCIA, Defendant-Appellant.
 No. 97-2269.
 United States Court of Appeals,
Seventh Circuit.
 May 6, 1998.
 
 Before ESCHBACH, RIPPLE, and EVANS, JJ.
 ORDER
 CRABB, Judge.
 
 
 1
 Luis E. Garcia was charged in January, 1997 with making a false statement to a federally insured bank in order to obtain a loan in violation of 18 U.S.C. § 1014 (Count I), using a false social security number on a loan application in violation of 42 U.S.C. § 408(a)(7)(B) (Court II), possessing a firearm while being a convicted felon in violation of 18 U.S.C. § 922(g)(1) (Count III), and causing false securities to be distributed in interstate commerce in violation of 18 U.S.C. § 2314 (Count IV) Garcia pleaded guilty to Count I and was sentenced to 46 months in prison, five years' supervised release, and was ordered to pay $4,153.18 in restitution. Garcia appeals, contending that the district court erred in concluding that two prior state convictions for passing bad checks were not related for purposes of sentencing under United States Sentencing Guidelines (U.S.S.G.) § 4A1.2(a)(2).[1] We affirm.
 
 
 2
 After Garcia entered into a written plea agreement, the United States Probation Office prepared a Presentence Investigation Report (PSR). In recommending a sentence, the probation officer concluded that Garcia's two prior 1989 convictions for passing bad checks in Illinois should be counted as separate offenses. According to the PSR and supporting documents, one conviction was for eight fraudulent checks that were drawn on an account at the M & I Bank of Racine, Wisconsin, and passed to the First Midwest Bank of Mundelein, Illinois from March 1-8, 1989. The other 1989 bad check conviction resulted from Garcia's passing one fraudulent check drawn on the M & I Bank of Racine to the Milwaukee Roadhouse in Libertyville, Illinois in May 1989. Garcia was sentenced to concurrent terms of imprisonment for both of these convictions on the same day.
 
 
 3
 The probation officer initially calculated Garcia's criminal history at ten points which placed Garcia in Criminal History, Category V. Garcia objected to this initial calculation, asserting that the two 1989 fraudulent check convictions were related under U.S.S.G. § 44A1.2(a)(2). In an addendum to the PSR, the probation officer disagreed with Garcia's argument and stated that while the "modus operandi was similar, writing fraudulent checks, they were nevertheless two separate crimes." Further, the addendum pointed out two other prior convictions in Garcia's record that increased Garcia's criminal history to fourteen points and resulted in Criminal History Category VI. With a total adjusted base offense level of fourteen,[2] the Sentencing Guidelines provide for an imprisonment range of 37 to 46 months.[3]
 
 
 4
 The district court rejected Garcia's arguments that the two convictions were related, stating that there was no formal order consolidating the cases; that the crimes had been committed two months apart and the checks had been written in two different places; and that the offenses had been investigated by two different law enforcement agencies. Concluding that the sentencing may have occurred on the same day to conserve judicial resources, the district court sentenced Garcia to 46 months in prison.
 
 
 5
 "[T]he proper standard of review in 'related offense' cases is cloudy." United States v. Carroll, 110 F.3d 457, 460 (7th Cir.1997). The instant appeal appears to challenge the district court's application of the Sentencing Guidelines to facts, which requires deferential review. See United States v. Brown, 962 F.2d 560, 565 (7th Cir.1992). However, a district court's interpretation of the Sentencing Guidelines is reviewed de novo. See United States v. Petty, 132 F.3d 373, 380 (7th Cir.1997). Notwithstanding the current ambiguity, we need not resolve the issue today because we would affirm the decision of the district court under either standard of review.
 
 
 6
 In calculating a defendant's Criminal History Category, criminal history points are assigned for a defendant's prior sentences. See U.S.S.G. § 4A1.1. Section 4A1.2(a)(2) states that "[p]rior sentences imposed in unrelated cases are to be counted separately." Consequently, prior sentences imposed in related cases are not counted separately. According to Application Note 3 to § 4A1.2.
 
 
 7
 [P]rior sentences are considered related if they resulted from offenses that (1) occurred on the same occasion, (2) were part of a single common scheme or plan, or (3) were consolidated for trial or sentencing.
 
 
 8
 Relying on the third factor, Garcia first assets that the district court erred in requiring a formal order of consolidation in order to consider the offenses related. Garcia correctly notes that this court has held that formal orders of consolidation are probative in determining relatedness, but are not necessarily conclusive. See United States v. Joseph, 50 F.3d 401, 403 (7th Cir.1995). Garcia argues that the district court erred in relying solely on the lack of a formal order of consolidation and in not inquiring further into the circumstances surrounding the passing of the bad checks.
 
 
 9
 In Joseph, this court considered whether a defendant's two convictions for helping another prisoner escape and escaping himself constituted related offenses for purposes of § 4A1.2(a)(2). Id. at 402. This court stated that the absence of an order of consolidation did not necessarily mean that the cases were unrelated, there could have been a "functional" consolidation, which would have satisfied the provisions of Application Note 3. Id. at 404. This court held that the cases were not related because the two offenses occurred months apart, there was no order of consolidation, and there was no evidence that Joseph's prior sentencing court had treated the offenses as consolidated. Id.
 
 
 10
 Similarly, in this case, there is no indication that the state court treated the fraudulent check cases as "functionally" consolidated. See United States v. Stalbaum, 63 F.3d 537, 539 (7th Cir.1995) ("What we require in the absence of a formal order of consolidation, is a showing on the record of the sentencing hearing that the sentencing judge considered the cases sufficiently related for consolidation and effectively entered one sentence for the multiple convictions.") Garcia failed to include in the record the sentencing transcripts from his two 1989 convictions. However, according to the PSR, the crimes took place two months apart and had different victim, different docket number, different charging documents, and separate presentence court hearings. See Addendum to the PSR. In addition, the sentencing orders appear to show that court costs were imposed separately for each offense even though Garcia was sentenced for both offenses on the same day. These factors indicate that the sentencing court did not consider the cases related. See Stalbaum, 63 F.3d at 539 (concluding that two prior offenses were not related under § 4A1.2 when the sentencing judge retained each case's docket number and imposed a separate sentence for each case).
 
 
 11
 That Garcia was sentenced for both offenses on the same day and received the concurrent sentences does not necessarily establish that the state court intended to consolidate the cases. See Joseph, 50 F.3d at 403 ("The same-day sentencing could be a coincidence, or a convenience to the defendant or to prison authorities. It need not imply a judgment that the defendant is not so wicked or dangerous as his having been charged with separate crimes in separate cases might suggest"), see also United States v. Bomski, 125 F.3d 1115, 1119 (7th Cir.1997) (sentencing for different crimes on the same day did not automatically indicate that cases were related under § 4A1.2), cert. denied, 118 S.Ct. 898 (1998), Stalbaum, 63 F.3d at 539 (finding no consolidation where defendant was sentenced on the same day to concurrent terms on multiple convictions and where cases retained their own docket numbers).
 
 
 12
 Garcia also argues that, under subsection 2 of Application Note 3 to § 4A1.2, the fraudulent check offenses were related because they were part of a common scheme or plan. Actions are considered part of a common scheme or plan "only if the defendant can prove that he either 'jointly planned' the crimes or planned one crime that 'would entail the commission of the other as well.' " Carroll, 110 F.3d at 460 (citation omitted). The burden is on Garcia to show that the passing of the bad checks was the result of a common scheme or plan. See United States v. Woods, 976 F.2d 1096, 1100 (7th Cir.1992).
 
 
 13
 Garcia asserted that the checks were part of a common scheme or plan because he had passed them to obtain the cash he needed to impress his girlfriend and his family to buy affection and respect. This argument fails. See Carroll, 110 F.3d at 460 ("Crimes are not related merely because each was committed with the same purpose"). In Carroll, the defendant had previously been sentenced for forgery when he stole four checks from his employer, forged them, and deposited them into his bank account. The defendant subsequently visited a client of his former employer, falsely stated that he was still an employee, and took some equipment belonging to the former employer. The defendant was convicted of grand theft property. This court affirmed the district court's decision that the two prior sentences for forgery and theft were not related. Id.
 
 
 14
 In doing so, the court rejected Carroll's argument that the crimes were jointly planned because he intended to steal from his employer. This court stated that "[f]orming the same intent at two distinct times to commit the same crimes (such as steal from an employer) does not evidence joint planning." Id. Here, Garcia may have had the same purpose in passing both of the bad checks, but he still has failed to present any evidence that he jointly planned the passing of the bad checks or that writing one set of bad checks necessarily required writing the other. See Woods, 976 F.2d at 1100 ("The mere fact ... that, in engaging in a pattern of criminal behavior, the defendant has as his purpose the acquisition of money to lead a particular lifestyle does not mean ... that he had devised a single common scheme or plan,") (quoting United States v. Chartier, 970 F.2d 1009, 1016 (2d Cir.1992)).
 
 
 15
 Garcia attempts to distinguish his case by asserting that writing a series of fraudulent checks is unlike other offenses because using one bank account means that discovering one fraudulent check would necessarily lead to the discovery of all fraudulent checks. According to Garcia, because the bad checks all originated from the same bank account, "logic" and "common practice" require that the two 1989 convictions be treated as a single common scheme. Nevertheless, Garcia simply has offered no evidence to show that the writing of the two 1989 fraudulent checks was jointly planned or that writing one check entailed writing the next check.
 
 
 16
 Finally, Garcia's reliance on this court's decision in United States v. Wilson, 98 F.3d 281 (7th Cir.1996), is misplaced. In Wilson, this court addressed whether the district court should have grouped for sentencing certain counts of an indictment under U.S.S.G. § 3D1.2, which requires that "[a]ll counts involving substantially the same harm shall be grouped together into a single Group" U.S.S.G. § 3D1.2. This court held that the district court should have grouped the defendant's counts on mail fraud and money laundering because "the money laundering in this case served to perpetuate the very [mail fraud] scheme that produced the laundered funds" Wilson, 98 F.3d at 283-84. In other words, "[w]ithout the fraud there would have been no funds to launder." Id. at 282-83 (internal citation omitted). Garcia's case is not controlled by this holding. First, Wilson addressed a different Sentencing Guideline than Garcia. More important, however, is the lack of evidence showing that Garcia passed the second bad check in furtherance of or to cover up a scheme that was started with the first bad check. Whereas the money laundering facilitated the mail fraud in Wilson, no similar evidence in Garcia's case.[4]
 
 
 17
 Accordingly, the decision of the district court is affirmed.
 
 
 18
 AFFIRMED.
 
 
 
 [1]
 Garcia's counsel initially filed a motion to withdraw and a supporting Anders brief in July 1997. However, this court rejected the brief as inadequate and counsel subsequently filed a brief on the merits
 
 
 [2]
 This included a three-level recommended decrease for acceptance of responsibility under U.S.S.G. § 3E1.1
 
 
 [3]
 If the two 1989 sentences were considered related for purposes of U.S.S.G. § 4A1.2(a)(2), Garcia would Garcia would have had eleven criminal history points which would have led to a Criminal History Category of V. With a base offense level of fourteen, his applicable sentencing range would have been 33 to 41 months, rather an 37 to 46 months
 
 
 [4]
 We note that Garcia could have sought relief by moving for a downward departure on the basis that his criminal history category overrepresented his past conduct under U.S.S.G. § 4A1.3. Such a motion likely would not have been successful. We note that the PSR recommended that the facts of this case did not warrant such a departure