**Pamela A. SHERRILL, Plaintiff,**

v.

**UNITED STATES of America, Defendant.**

**No. 2:04–CV–509.**

United States District Court, N.D. Indiana, Hammond Division.

Jan. 27, 2006.

Pamela A. Sherrill, Seymour, WI, pro se.

Karen A. Smith, Washington, DC, for Defendant.

## OPINION AND ORDER

LOZANO, District Judge.

This matter is before the Court on the: (1) United States' Motion for Summary Judgment, filed by the United States of America, on October 14, 2005, and (2) Plaintiff's Motion for Summary Judgment, filed by Plaintiff, Pamela Sherrill, on October 14, 2005. For the following reasons, the United States' Motion for Summary Judgment is **GRANTED**, and the Plaintiff's Motion for Summary Judgment is **DENIED**. The Clerk is **ORDERED** to **DISMISS THIS CASE WITH PREJU-**

DICE. The Clerk is **FURTHER ORDERED TO CLOSE THIS CASE.**

*BACKGROUND*

Walter A. Mucha, Decedent, retired from Amoco Oil Company on October 1, 1981. Instead of receiving an annuity from the retirement plan, he opted for a lump sum settlement from his employer, which he rolled over into an individual retirement account ("IRA") with Merrill Lynch, Pierce, Fenner & Smith.

Decedent began receiving a distribution of $1,000 per month from the IRA in January 1983. The $1,000 monthly distributions continued until his death on April 28, 1999. The IRA agreement does not indicate that Decedent's election to receive the monthly annuity of $1,000 until death was irrevocable, but rather states that "[t]he Participant specifically reserves to himself sole management of the Custodial Account ...." (United States' Ex. 3.)

The executrix of the estate filed an Internal Revenue Service (IRS) Form 706 for Decedent's estate on April 28, 2000. The value of the Merrill Lynch IRA was included in the value of the estate. The return was timely filed, and the taxes paid. On July 25, 2000, the executrix filed an amended Form 706, excluding the value of the Merrill Lynch IRA, and requesting a refund of the estate tax paid in the amount of $33,632.00.

In a letter dated October 12, 2001, the IRS indicated the value of the estate would not be adjusted. The executrix then filed a formal protest with the IRS Office of Appeals on November 29, 2001. In a letter dated December 11, 2002, the IRS Office of Appeals disallowed the claim for a refund of excess estate tax.

The United States argues in its motion for summary judgment that an IRA created from the rollover of funds received under a lump sum distribution from an employer pension plan upon separation from service does not qualify for exclusion from Decedent's gross estate. Specifically, the United States argues that the interpretation of section 1852(e)(3) of the Tax Reform Act of 1986 (including Revenue Ruling 92–22, 1992 WL 754670 and the legislative history), mandates a holding that, because the Decedent rolled over the amounts due under a qualified plan into an IRA, the amount is not excluded from his gross estate.

Plaintiff argues that the value of the annuity receivable by the beneficiaries of Decedent's Merrill Lynch IRA is excludable from the value of the estate under 26 U.S.C. section 2039(e) as amended by P.L. 98–369 section 525(b) and P.L. 99–514 section 1852(e)(3). Specifically, Plaintiff argues that P.L. 98–369 section 525(b)(2) and P.L. 99–514 section 1852(e)(3) indicate Congress' intent to treat fairly all taxpayers who had retired prior to the repeal of 26 U.S.C. section 2039(e). Plaintiff contends that this fairness was achieved by "grandfathering" estates of decedents who had retired prior to January 1, 1985, whether or not they were "in pay status" or had made an "irrevocable election." Plaintiff believes Decedent's estate is one such estate, and deserves the same treatment.

*DISCUSSION*

The standards that generally govern summary judgment motions are familiar. Pursuant to Rule 56(c) of the Federal Rules of Civil Procedure, summary judgment is proper only if it is demonstrated that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. *See Nebraska v. Wyoming,* 507 U.S. 584, 590, 113 S.Ct. 1689, 123 L.Ed.2d 317 (1993); *Celotex Corp. v. Catrett,* 477 U.S. 317, 322–23, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). In other words, the record must reveal that no reasonable jury could find for the nonmovant. *Karazanos v. Navis-*

*tar Int'l Transp. Corp.,* 948 F.2d 332, 335 (7th Cir.1991); *see also Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 250, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). In deciding a motion for summary judgment, a court must view all facts in the light most favorable to the nonmovant. *Anderson,* 477 U.S. at 255, 106 S.Ct. 2505; *NUCOR Corp. v. Aceros Y Maquilas de Occidente,* 28 F.3d 572, 583 (7th Cir.1994).

The burden is upon the movant to identify those portions of "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits," if any, that the movant believes "demonstrate the absence of a genuine issue of material fact." *Celotex,* 477 U.S. at 323, 106 S.Ct. 2548. Once the movant has met this burden, the nonmovant may not rest upon mere allegations but "must set forth specific facts showing that there is a genuine issue for trial." Fed.R.Civ.P. 56(e); *Becker v. Tenenbaum–Hill Assocs., Inc.,* 914 F.2d 107, 110 (7th Cir.1990); *Schroeder v. Lufthansa German Airlines,* 875 F.2d 613, 620 (7th Cir.1989). "Whether a fact is material depends on the substantive law underlying a particular claim and 'only disputes over facts that *might affect the outcome* of the suit under governing law will properly preclude the entry of summary judgment.' " *Walter v. Fiorenzo,* 840 F.2d 427, 434 (7th Cir.1988) (emphasis in original) (citing *Anderson,* 477 U.S. at 248, 106 S.Ct. 2505).

"[A] party who bears the burden of proof on a particular issue may not rest on its pleading, but must affirmatively demonstrate, by specific factual allegations, that there is a *genuine* issue of material fact which requires trial." *Beard v. Whitley County REMC,* 840 F.2d 405, 410 (7th Cir.1988) (emphasis in original); *see also Hickey v. A.E. Staley Mfg.,* 995 F.2d 1385, 1391 (7th Cir.1993). Therefore, if a party fails to establish the existence of an essential element on which the party bears the burden of proof at trial, summary judgment will be appropriate. In this situation, there can be " 'no genuine issue as to any material fact,' since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Celotex,* 477 U.S. at 323, 106 S.Ct. 2548.

Where the parties file cross-motions for summary judgment, the Court must consider each motion and, even if the parties agree that no genuine issue of material fact exists, the Court can deny all motions if the parties do not establish their rights to judgment as a matter of law. *Grabach v. Evans,* 196 F.Supp.2d 746, 747 (N.D.Ind. 2002).

*Legislative Chronology*

This dispute is somewhat muddled due to the frequent tinkering with 26 U.S.C. section 2039 (Internal Revenue Code or "IRC" section 2039), during the period of time involved in this case. The parties do not dispute the chronology of the changes in law.

From 1976 until 1984, annuities related to retirement accounts were excluded from a decedent's gross estate up to $100,000, under IRC sections 2039(c), (d), (e), (f), and/or (g). These sections were repealed in July 1984 by the Tax Reform Act of 1984 ("TRA 84"). *See* P.L. 98–369 § 525(a).

The repeal was effective for the estates of decedents dying after December 31, 1984. P.L. 98–369 § 525(b)(2). However, two exceptions were carved out. Section 525(b)(2) provided that the section 525 amendments did not apply to estates of decedents who: (1) were in pay status on December 31, 1984; and (2) irrevocably elected the form of the retirement benefit and any survivor benefit before July 18, 1984 to exclude the annuity up to the $100,000 limit. Section 525(b)(2).

In 1986, the transition rule was re-written. Section 1852(e)(3) of the Tax Reform Act of 1986 ("TRA 86") amended P.L. 98–369 section 525(b) by grandfathering in any individual who: (1) separated from service before January 1, 1985; and (2) did not change the form of the benefit before death. P.L. 99–514 section 1852(e)(3). In other words, the new transition rule provided relief for those decedents who were "separated from service" and would have qualified for the grandfather provisions under the amendments of the TRA 84 with respect to qualified pension plans but for their failure to make the irrevocable election or to meet the pay status requirements. In this case, it is undisputed that decedent separated from service before January 1, 1985 (he retired on October 1, 1981), he was receiving monthly distributions from the IRA on December 31, 1984, and he did not change the form of benefit before his death (on April 28, 1999).

*Whether the Transition Rule Excludes IRAs*

The United States concedes that if Decedent had retained his funds in a qualified plan, the value of that interest in the plan would have been excluded from his gross estate because: (1) he retired before January 1, 1985; (2) he would be deemed to have made an irrevocable election prior to that date; and (3) he would be deemed to have been in pay status on the appropriate date. However, the United States contends that because Decedent rolled the amounts due under the qualified plan into an IRA, the amount is not excluded from his gross estate.

First, the United States points to legislative history. The legislative history in this case notes that the exclusion applies only to "a qualified plan," [1] not an IRA.

Specifically, the history states that "as long as the other conditions for the grandfather are satisfied, an election is deemed to be irrevocable under a qualified plan **(but not under an IRA)** if the form of the benefit distribution elected is not changed prior to death." S.Rep. No. 99–313, 99th Cong., 2d Sess. 1019 (1986), 1986–3(Vol.3) C.B. 1, 1018 (emphasis added).

The United States also cites to IRS Revenue Ruling 92–22, 1992 WL 754670, which discusses the transition rule and concludes that the exclusion of IRAs from the transition rule stems from the fact that the statute exempts only those plans that result from "separation of service." Rev. Rul. 92–22, 1992–1 C.B. 313, 1992 WL 754670. The United States contends that the Revenue Ruling addresses an identical situation—where an individual has taken funds from a qualified plan and rolls them over into an IRA. This Court agrees that the Revenue Ruling is directly on point. "Situation 2" in the Revenue Ruling describes a situation analogous to this case: "A" retired from employment in June 1984 and died in 1988. During A's employment, he was a participant in a qualified employer-maintained pension plan described in section 401(a) of the Code. Upon retirement in June 1984, A transferred the proceeds from the plan into an IRA. The transfer was a qualified rollover described in section 402(a)(5).

The Revenue Ruling states in pertinent part as follows:

> Section 1852(e)(3) of 1986 TRA does not deal specifically with the situation in which an individual participant in an employer-provided retirement plan who otherwise meets the requirements of the transition rule (i.e., separation from ser-

---

**1.** A qualified pension plan is a plan that qualifies under 26 U.S.C. section 401, *et seq.* Plaintiff concedes that "[i]n general, it appears that the IRS believes benefits received under a rollover IRA are not equivalent to benefits received under a qualified plan." (Pl.'s Resp. to United States' Mot. for Summ. J., pp. 4–5.)

vice prior to January 1, 1985, and no change in the form of retirement or survivor benefits) transferred the proceeds from the plan to an IRA. **If the basis on which Congress extended the transition rule in 1986 TRA was the notion that those individuals who separated from service prior to January 1, 1985, were caught unaware by the changes made in 1984 TRA, that same rationale would apply with equal force to individuals who separated from service prior to that date and rolled their accounts into an IRA. Nevertheless, the legislative history of section 1852(e)(3) unambiguously precludes that result.** The Senate report states that "... as long as the other conditions for the grandfather are satisfied, an election is deemed to be irrevocable under a qualified plan (but not under an IRA) if the form of the benefit distribution elected is not changed prior to his death." *S.Rep. No. 99–313, 99th Cong., 2d Sess. 1019 (1986), 1986–3 (Vol.3) C.B. 1, 1018.* This is consistent with the use of the term "separation from service" as a requirement for transition relief, as distributions from an IRA are not dependent on any separation from Service.

Rev. Rul. 92–22, 1992–1 C.B. 313, 314, 1992 WL 754670 (emphasis added). The IRS therefore determined that "[s]ection 1852(e)(3) of the 1986 Tax Reform Act does not apply to the proceeds of an individual retirement account, whether attributable to contributions by the decedent or proceeds rolled over from a qualified employer-maintained pension plan." *Id.* In this case, the United States argues that because Decedent's IRA did not qualify under the grandfather provisions of the TRA 84, as amended by TRA 86, his IRA was includable in his gross estate. Revenue rulings are proper for this Court to consider. *See United States v. Wisconsin Power and Light Co.,* 38 F.3d 329, 334 (7th Cir.1994) (quotation omitted) ("Although the Service's interpretive rulings do not have the force and effect of regulations, we give an agency's interpretations and practices considerable weight where they involve the contemporaneous construction of a statute and where they have been in long use.").

In response, Plaintiff first contends that the United States misinterprets the meaning of "in pay status." Plaintiff posits that "in pay status," in the context of TRA 84 section 525(b)(2), applies to benefits payable under a retirement plan and because Decedent began receiving monthly distributions from his IRA in January 1983, he was "in pay status" with respect to section 525(b)(2). Plaintiff also argues that Decedent need only have been "a participant in any plan" and that "any plan" refers to a plan described in IRC 2039(e) prior to appeal, which includes a rollover IRA. In other words, Plaintiff argues that by receiving a recurring monthly distribution of $1,000 from his IRA, Decedent had in effect made an irrevocable election under TRA 84 section 525(b)(4).

Plaintiff's arguments regarding definitions miss the mark. First, Revenue Ruling 92–22 states that:

> Section 1852(e)(3) of the 1986 TRA does not deal specifically with the situation in which an individual participant in an employer-provided retirement plan **who otherwise meets the requirements of the transition rule** (i.e., separation from service prior to January 1, 1985, and no change in the form of retirement or survivor benefits) transferred the proceeds from the plan to an IRA.

Rev. Rul. 92–22, 1992–1 C.B. 313, 314. Thus, the issue in this case is not whether Decedent was "in pay status" at the appropriate time. Assuming Decedent was "in pay status," Plaintiff's argument *still fails* because Decedent transferred the plan proceeds into an IRA, and because Dece-

dent failed to make an irrevocable election of benefits.

Second, the Court believes that the legislative history and the Revenue Ruling specifically rebut Plaintiff's argument that Decedent need only have participated in "any plan." The Senate report explicitly states that "... as long as the other conditions for the grandfather are satisfied, an election is deemed to be irrevocable under a qualified plan (but not under an IRA) if the form of the benefit distribution elected is not changed prior to his death." Rev. Rul. 92–22, 1992–1 C.B. 313, 314. Thus, because the legislative history specifically notes that the exclusion applies only to a "qualified plan," and not an IRA, an IRA cannot be lumped together with other qualified plans to fit the statutory exception. *See United States v. Elmendorf,* 945 F.2d 989, 997 (7th Cir.1991), *superseded on other grounds by United States v. Woods,* 976 F.2d 1096 (7th Cir.1992) ("Courts customarily consider legislative history in interpreting statutes.").

In its motion for summary judgment, Plaintiff argues that section 1852(e)(3) mandates a holding that Decedent's IRA is excludable from his gross estate because "the intent of Congress ... was to fairly treat all taxpayers who had retired prior to the repeal of 26 U.S.C. § 2039(e)." (Mem. in Supp. of Pl.'s Mot. for Summ. J., p. 6.) Plaintiff contends that TRA 84 section 525(b)(2) failed to include two groups of retired individuals—those who had not yet begun to receive distributions from their retirement plan, and those whose retirement plan did not offer an "irrevocable election" of benefits. Congress righted this disparity, claims Plaintiff, by passing TRA 86. Plaintiff's argument is again rebutted by the unambiguous legislative history and clear Revenue Ruling 92–22, which specifically provide that the transitional rules under section 1852(e)(3) of TRA 86 do not apply to the proceeds of an IRA.

In a Technical Advice Memorandum, the IRS explained the rationale behind the different treatment of IRAs as follows:

The exclusion of IRAs from the transition rules in § 1852(e)(3) of TRA 86 recognizes the difference in the character of an IRA from that of a qualified plan. Inherent in a qualified plan is the concept of employment and, thus, retirement or separation from service. A participant in a qualified plan that is maintained by the participant's employer separates from service with that employer when the employer-employee relationship is severed through retirement, termination, or other means and the employee has an interest in the plan benefits, payable at the date of severance or at an ascertainable time in the future. An individual retirement account is not an employer-maintained plan, and, thus, the beneficiary of proceeds in an individual retirement account can not meet the "separation from service" requirements even though the proceeds may have been transferred to the individual retirement account in a rollover described in section 402(a)(5), 402(a)(7), 403(a)(4), or 403(b)(8). Under an IRA, the owner retains control over contributions to and distributions from the account. Once the proceeds from a qualified plan are "rolled over" into an individual retirement account, they become the proceeds of an IRA, not a qualified employer-maintained plan. Thus, the applicability of the estate tax exclusion under 2039(e) for the proceeds of an IRA, including proceeds "rolled over" in a qualified rollover from a qualified plan under § 401(a), is determined by the transition rule under TRA 84, without regard to the amendments made by TRA 86.

I.R.S. Tech. Adv. Mem. 9828003, 1998 WL 382775 (July 10, 1998). Although Plaintiff contends this rollover IRA should be treat-

ed differently than other IRAs, Plaintiff cites to no authority or case law in support of this bald assertion. Thus, the IRA proceeds are fully includable in Decedent's estate unless Decedent satisfied the transitional rules of TRA 84 (irrevocably elected the form of benefit and was receiving distributions from the account). As discussed above, Decedent had not made an irrevocable election as to the form of the benefit.

Accordingly, the proceeds of the IRA, which Decedent had rolled over from a qualified plan upon retirement, are includable in Decedent's gross estate under section 2039(a). As such, the United States' motion for summary judgment is granted, and Plaintiff's motion for summary judgment is denied.

*CONCLUSION*

For the aforementioned reasons, the United States' Motion for Summary Judgment is **GRANTED**, and the Plaintiff's Motion for Summary Judgment is **DENIED**. The Clerk is **ORDERED** to **DISMISS THIS CASE WITH PREJUDICE.** The Clerk is **FURTHER ORDERED TO CLOSE THIS CASE.**